1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NORTHWEST ADMINISTRATORS, INC,

                     Plaintiff,

     v.

CY EXPO LLC,

                    Defendant.

CASE NO. 2:23-cv-01419-TL

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

This matter comes before the Court on Plaintiff Northwest Administrators, Inc.'s Amended Motion for Entry of Default Judgment. Dkt. No. 15. Having reviewed the Motion and the relevant record, the Court GRANTS the Motion.

## I.      BACKGROUND

Plaintiff is the authorized administrative agency for and the assignee of the Western Conference of Teamsters Pension Trust Fund, which provides retirement benefits to eligible participants. Dkt. No. 1 at 1. Plaintiff alleges that Defendant Cy Expo LLC is a Nevada company that is bound to a collective bargaining agreement ("CBA") with Local 631 of the International

1   Brotherhood of Teamsters, which obligates it to pay monthly contributions for full- and part-time

2   employees performing work covered by the CBA "at specific rates for each hour of

3   compensation (including vacations, holidays, overtime and sick leave)." *Id.* at 2. Plaintiff further

4   alleges that Defendant accepted Plaintiff's trust agreement, agreeing to pay liquidated damages

5   at a twenty percent (20%) rate on delinquent contributions, along with interest and the attorney

6   fees and costs associated with its unpaid obligations. *Id.* at 3. Plaintiff states that "[s]ince the 1st

7   day of May, 2023, Defendant has failed to promptly report for and pay to the Plaintiff's Trust all

8   amounts due . . . , and only Defendant's records contain the detailed information necessary to an

9   accurate determination of the extent of the Defendant's unpaid obligations to the Trust." *Id.*

10         In September 2023, Plaintiff filed suit under the Employee Retirement Income Security

11   Act ("ERISA") and the Taft-Hartley Act. Dkt. No. 1-1. Plaintiff's prayer for relief seeks: (1) a

12   monthly accounting from Defendant showing the names, Social Security numbers, and total

13   monthly hours for which Defendant compensated each employee who is a member of the

14   bargaining unit represented by Local 631 "for the employment period commencing May 2023 to

15   the date of service of this Complaint to collect Trust Funds, and for whatever amounts may

16   thereafter accrue," (2) delinquent contributions, (3) liquidated damages and pre-judgment

17   interest, (4) attorney fees and costs incurred "in connection with the Defendant's unpaid

18   obligation," and (5) other relief the Court deems just and equitable. Dkt. No. 1 at 3–4. After

19   being properly served, Defendant failed to appear. *See* Dkt. Nos. 6, 7. Plaintiff moved for and

20   obtained an order of default. Dkt. Nos. 8, 9. Plaintiff then filed for default judgment (Dkt. Nos.

21   11, 12), which was denied because the Court was unable to verify the total amount of damages

22   owing (Dkt. No. 14). Plaintiff again requests entry of default judgment. Dkt. No. 15.

23         //

24         //

## II.   LEGAL STANDARDS

### A.   Entering Default Judgment

A court's decision to enter a default judgment is discretionary. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Default judgment is "ordinarily disfavored," because courts prefer to decide "cases on their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986) (affirming district court's denial of default judgment). When considering whether to exercise discretion in entering default judgments, courts may consider a variety of factors, including:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of a plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure.

*Id.* at 1471–72. Courts reviewing motions for default judgment must accept the allegations in the complaint as true, except facts related to the amount of damages. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). "However, necessary facts not contained in the pleadings, and the claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992); *see also Little v. Edward Wolff & Assocs. LLC*, No. C21-227, 2023 WL 6196863, at *3 (W.D. Wash. Sept. 22, 2023) (quoting *Cripps*). Damages are also limited to what was reasonably pleaded. Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").

### B.   Reasonableness of Attorney Fees Request

"To recover attorneys' fees and costs on default judgment, the plaintiff 'must specify the judgment and the statute, rule, or other grounds [so] entitling' her." *In re Ferrell*, 539 F.3d 1186 (9th Cir. 2008) (quoting Fed. R. Civ. P. 54(d)(2)(B)(ii)). Additionally, in assessing requests for

1    attorney fees, courts in this Circuit consider the reasonableness of the request "based on the

2    number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate

3    [the lodestar calculation], and then adjusted in accordance with the factors laid out in *Kerr v.*

4    *Screen Extras Guild, Inc.*," *N. Seattle Health Ctr. Corp. v. Allstate Fire & Cas. Ins. Co.*, No.

5    C14-1680, 2016 WL 4533055, at *5 (W.D. Wash. Jan. 27, 2016), which are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to the acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

12    526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505

13    U.S. 557 (1992); *accord Burkhalter v. Burkhalter*, Nos. C22-55909, C22-55910, C22-55912,

14    C22-55913, 2023 WL 7490053, at *3–4 (9th Cir. Nov. 13, 2013) (finding an abuse of discretion

15    where a court failed to address relevant reasonableness factors set forth in *Kerr* after calculating

16    the lodestar when reviewing a request for attorney fees). The *Kerr* analysis must be completed

17    even in the context of motions for default judgment. *N. Seattle Health Ctr. Corp.*, 2016 WL

18    4533055, at *5.

19

### III.   DISCUSSION

20    **A.   Propriety of Default Judgment**

21         This Court has exclusive jurisdiction over this action pursuant to ERISA (29 U.S.C.

22    § 1132(e)(1), (f)) and the Taft-Hartley Act (29 U.S.C. § 185(a)). Venue is proper in this District

23    because Plaintiff's trust funds are administered here. *See* 29 U.S.C. § 1132(e)(2).

24         Considering the *Eitel* factors, the Court finds that entry of default judgment is proper.

First, Plaintiff and the covered employees would be prejudiced absent an order of default

judgment for the amounts due to the Trust for bargained-for benefits. Second, taking the

allegations in Plaintiff's complaint as true, Plaintiff has sufficiently pleaded potentially

meritorious claims for delinquent contributions. Dkt. No. 1 at 2–3; *see also PepsiCo, Inc. v.

Calif. Sec'y Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (explaining how the Ninth

Circuit has interpreted two of the *Eitel* factors to require plaintiffs to state a claim on which they

can recover).[1] Third, the sum of money at stake is relatively low (only several thousand dollars)

and no more than what Defendant owes Plaintiff. *See Curtis v. Illumination Arts, Inc.*, 33 F.

Supp. 3d 1200, 1212 (W.D. Wash. 2014) (stating that this factor accounts for "the amount of

money requested in relation to the seriousness of the defendant's conduct, whether large sums of

money are involved, and whether the recovery sought is proportional to the harm caused by

defendant's conduct" (internal citations and quotation omitted)). Fourth, the Court finds no

evidence suggesting a likelihood of disputes concerning material facts. Fifth, there is no evidence

that that default was due to excusable neglect, as Plaintiff has shown that Defendant was

properly served but Defendant failed to appear in this action. Dkt. Nos. 7, 8. The *Eitel* factors

thus favor entry of default judgment, notwithstanding the strong policy under the Federal Rules

of Civil Procedure that claims be resolved through contested litigation.

---

[1] While the Court does not question the sufficiency of the complaint—which is the scope of its review at this stage—the documents attached to the default judgment motion do not clearly demonstrate the existence of a current agreement between Plaintiff and Defendant for payment of employer contributions to the trust fund at issue. *See generally* Dkt. No. 16-2 (copy of the agreement and declaration of trust establishing a pension trust fund between the Western Conference of Teamsters and covered employers, employees, and local unions dated April 14, 2020, *and* Dkt. No. 16-1 (employer-union pension certification between Teamsters Local 631 and CY Expo LLC signed January 11, 2017, that does not include the relevant written labor agreement and states that "the undersigned agree that the provisions of any memorandum of understanding, supplement, amendment, addendum, or other modification of the labor agreement directly or indirectly affecting the employer's obligation to contribute to the trust fund shall not bind the trustees unless and until a complete written and signed copy of those provisions is furnished to the area administrative office and accepted by the trustees").

**B.      Amount of Damages to Be Awarded**

Plaintiff's complaint seeks delinquent contributions, liquidated damages, pre-judgment interest, and attorney fees and costs. Dkt. No. 1 at 4. According to the complaint, by entering into a trust agreement with Plaintiff, Defendant "agreed to pay liquidated damages equal to twenty percent (20%) of all delinquent and delinquently paid contributions due to the Trust, together with interest . . . as well as attorney's fees and costs . . . ." Dkt. No. 1 at 3. Plaintiff does not specify the amount of delinquent contributions sought in its complaint, however, by indicating the exact timeframe at issue, Defendant had adequate notice of the scope and approximate size of the damages award that would be requested. *See Gray Ins. Co. v. Lectrfy, Inc.*, No. C13-1411, 2014 WL 12689270, at *6 (C.D. Cal. Mar. 3, 2014) (explaining that the purpose of Rule 54(c)'s command that a default judgment "shall not be different in kind from or exceed in amount that which is prayed for in the complaint" is to allow the defending party to determine "whether to expend the time, effort, and money necessary to defend the action" (quoting Fed. R. Civ. P. 54(c) (alterations in original) and 10 Charles Alan Wright & Arthur R. Miller, *Fed'l Prac. & Proc.* § 2663 (3d ed. 1998)). *Cf. Finkel v. Triple A. Grp., Inc.*, 708 F. Supp. 2d 277, 281–82, 291 (E.D.N.Y. 2010) (adopting report and recommendation entering default judgment in favor of ERISA administrator seeking unpaid contributions, even for contributions other than those identified in the complaint, where complaint gave defendants notice that plaintiff would seek future unpaid contributions that accrued during the litigation).

Plaintiff provides evidentiary support for its claim that Defendant owes $5,478.66 in unpaid contributions for May 2023 (Dkt. No. 16-5 at 2–5) and that Defendant was delinquent in paying contributions for the following months: June 2023 contributions of $4,723.55 were paid two months late (*id.* at 6–9), July 2023 contributions of $5,645.90 were paid one month late (*id.*

at 10–13),[2] and August 2023 contributions of $6,738.75 were paid one week late (*id.* at 16–18).

The Court finds that Plaintiffs have submitted sufficient evidence alongside the default judgment motion to demonstrate that Defendant owes the following amounts based on its allegations: (1) $5,478.66 in delinquent contributions; (2) $4,517.37 in liquidated damages; and (3) $291.41 in accrued, pre-judgment interest. *See* Dkt. No. 16-6. The Court also finds that post-judgment interest shall accrue at seven percent (7%) per annum from the date of entry of this judgment. Dkt. No. 15, ¶ 9; Dkt. No. 15-2.

## C.    Propriety of Attorney Fees and Costs

Plaintiff has alleged that Defendant owes attorney fees and costs pursuant to a trust agreement. Dkt. No. 1 at 3. Specifically, Plaintiff requests $927.00 in attorney fees and $532.00 in court costs (Dkt. No. 15, ¶ 13; Dkt. No. 15-3; Dkt. No. 16-2 at 6). Including these fees and costs, the total amount of the judgment Plaintiff seeks to collect is $11,746.44. Dkt. No. 16-6.

While Plaintiff has provided a sufficiently precise accounting of the attorney fees requested, Plaintiff did not specifically address the *Kerr* factors in its motion. Nevertheless, the attorney fees appear reasonable in light of the experience and skill of counsel and the non-attorneys performing the work, the rates requested and hours expended, and the efforts and results achieved. *See Trs. of Constr. & Laborers Health & Welfare Tr. v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006) ("fees for work performed by non-attorneys may be billed separately, at market rates, if this is 'the prevailing practice in a given community' " (quoting *Mo. v. Jenkins by Agyei*, 491 U.S. 274, 287 (1989)). Only one hour of attorney time (billed at

---

[2] Despite the Court pointing out these discrepancies in its previous Order denying default judgment (Dkt. No. 14 at 1–2), Plaintiff's motion still incorrectly lists the amount of delinquently paid contributions for June and July 2023 as $4,723.65 and $5,465.90, respectively (*see* Dkt. No. 15, ¶ 12). However, the supporting documents show the correct amounts and these mistakes do not impact the total calculation of what is owed. *See* Dkt. No. 16-5 (showing the delinquent contributions for June and July as $4,723.55 and $5,645.90, respectively); Dkt. No. 16-6 (calculating the interest, liquidated damages, and total amount due based on delinquent contributions of $4,723.55 and $5,645.90 for June and July); Dkt. No. 15-5 (proposed judgment using the calculations based on $4,723.55 and $5,645.90).

$300/hour) was spent on this case, and the non-attorney billable rates used were $120 and $60, respectively. Dkt. No. 15-3. Further, it appears that fees requested are in-line with or lower than those awarded in default judgment cases in this District, particularly given the damages recovered and the modest sum requested in attorney fees. *See, e.g.*, *Little*, 2023 WL 6196963, at *8 (awarding over $5,500 in attorney fees and costs alongside a $1,000 damages award); *Nw. Admins., Inc. v. KCD Trucking, Inc.*, No. C22-1641, 2023 WL 4027597, at *3 (awarding a union trust fund's request for nearly $800 in attorney fees and $482.00 in costs alongside just $2,312 for delinquent contributions); *Jung v. Liberty Mut. Fire Ins.*, No. C22-5127, 2023 WL 3204595, at *5 (W.D. Wash. May 2, 2023) (awarding over $6,500 in attorney fees alongside a damages award of less than $6,000). The Court thus finds that the *Kerr* factors lean in favor of an award of costs and fees.

**D.      Additional Injunctive Relief**

Regarding the monthly accounting Plaintiff seeks in its prayer for relief, Plaintiff has not included this request in its default judgment motion, even though the Court explicitly gave it an opportunity to do so in the Order denying its previous default judgment motion (Dkt. No. 14 at 2) nor does Plaintiff's proposed judgment include it as a form of relief sought at this stage (*see* Dkt. Nos. 15, 15-5). Moreover, the Court is unable to determine from the language used in the complaint what timeframe the request seeks to cover (given the inclusion of the language "and for whatever amounts may thereafter accrue"). *See* Dkt. No. 1 at 3. For these reasons, the Court does not grant this relief, to the extent it is implicitly sought in Plaintiff's motion.

## IV.   CONCLUSION

Accordingly, the Court GRANTS in part and DENIES in part Plaintiff's Motion for Entry of Default Judgment (Dkt. No. 15). To the extent Plaintiff seeks any monthly accounting, the Court DENIES this request. The Court GRANTS Plaintiff's request for damages related to delinquent

contributions as well as attorney fees and costs. The Court DIRECTS entry of default judgment in the amount of $11,746.44, as detailed within. Post-judgment interest shall accrue on this judgment pursuant to 28 U.S.C. § 1961(a).

Dated this 21st day of December 2023.

Tana Lin
United States District Judge